[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 14, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-12917
Non-Argument Calendar

_____

D. C. Docket No. 06-00025-CR-T-26EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROGELIO CARVAJAL-SANCHEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(November 14, 2006)**

Before WILSON, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Rogelio Carvajal-Sanchez appeals his two concurrent 135-month sentences for possession with intent to distribute five kilograms or more of cocaine, in violation of 46 U.S.C. app. § 1903(a), (g), 21 U.S.C. § 960(b)(1)(B)(ii), and conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 46 U.S.C. app. § 1903(a), (g), (j), and 21 U.S.C. § 960(b)(1)(B)(ii), while aboard a vessel subject to the jurisdiction of the United States. On appeal, Carvajal-Sanchez argues that the district court clearly erred in denying a minor-role adjustment. For the reasons set forth more fully below, we affirm.

Carvajal-Sanchez and seven codefendants were indicted on the above-mentioned charges, to which Carvajal-Sanchez pled guilty. According to the presentence investigation report ("PSI"), on January 12, 2006, the U.S. Coast Guard obtained permission to board and search a Panamanian commercial freighter, ultimately finding 50 bales of cocaine, which weighed 1,134 kilograms. Carvajal-Sanchez was identified as the cook, and the other seven codefendants held the following positions: captain, chief and second engineers, first and second officers, deck seaman, and machinist. The freighter's route took it from Spain, to Trinidad, to the Dominican Republic, to Guyana, and to Haiti. In the early morning hours of January 12, 2006, the entire crew participated in the transfer of the 50 bales of cocaine from a go-fast vessel off the coast of Venezuela. Carvajal-

Sanchez was held accountable for 1,134 kilograms of cocaine at sentencing.

In preparing the PSI, the probation officer did not make an adjustment to the Guidelines for Carvajal-Sanchez's role in the offense. Carvajal-Sanchez objected to not receiving a minor-role adjustment, arguing that he was the cook, a position that was probably "at the very bottom of the totem pole," had no involvement in planning the crime and no proprietary interest in the drugs, and, from his background, the court could find that he was not making a great deal of money in the venture. Carvajal-Sanchez asked the district court to consider not only his codefendants, but also other people who were part of the conspiracy and who had greater gain and greater roles than his. The district court overruled Carvajal-Sanchez's objection, finding that, while Carvajal-Sanchez "may not be on the same level nautical-wise" as the engineers, officers, and machinist, he still played an integral part in the offense because people need nutrition in order to perform their jobs. The district court also found that Carvajal-Sanchez was involved with a substantial quantity of drugs, and that his actual and relevant conduct were identical.

On appeal, Carvajal-Sanchez challenges this ruling, arguing that he was no more than a crewman. He relies upon the following factors to demonstrate his entitlement to a minor-role reduction: (1) he was a common man who lives by

3

common means and had no interest in the cocaine on the vessel; (2) he took no part in planning or organizing the transaction; (3) he lacked knowledge of the scope and structure of the offense; (4) he had no supervisory authority, did not make any decisions material to the offense, and did not plan the purchase or distribution of the drugs; (5) he lacked responsibility and independent control or authority over the drugs, and was not the beneficiary of large amounts of money or profits; and (6) most importantly, he never possessed a firearm for security or authority purposes. He further argues that he was not a leader or organizer, did not physically possess the drugs, did not share in the profits to be made from distribution, and had less authority, responsibility, or influence than the other co-conspirators on the vessel.

"[A] district court's determination of a defendant's role in the offense is a finding of fact to be reviewed only for clear error." United States v. De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). Section 3B1.2 of the Sentencing Guidelines provides for a two-level decrease if the defendant was a minor participant in any criminal activity. U.S.S.G. § 3B1.2. Section 3B1.2 permits an adjustment to the Guideline range for a defendant who is substantially less culpable than the average participant. Id., comment. (n.3). A defendant is a minor participant if he is less culpable than most other participants, but his role cannot be

4

described as minimal. Id., comment. (n.5). "The defendant bears the burden of proving his minor role by a preponderance of the evidence." United States v. Boyd, 291 F.3d 1274, 1277 (11th Cir. 2002).

In determining a defendant's mitigating role in the offense, the district court first "must measure the defendant's role against the relevant conduct for which [he] was held accountable at sentencing" and, second, "may also measure the defendant's role against other participants, to the extent that they are discernable, in that relevant conduct." De Varon, 175 F.3d at 945. Where a drug courier's relevant conduct is limited to his own criminal act, a district court may legitimately conclude that the courier played an important or essential role in that crime. See id. at 942-43. Furthermore, "where the relevant conduct attributed to a defendant is identical to [his] actual conduct, [he] cannot prove that [he] is entitled to a minor role adjustment simply by pointing to some broader criminal scheme in which [he] was a minor participant but for which [he] was not held accountable." Id. at 941. As to the second prong, "the district court must determine that the defendant was less culpable than most other participants in [his] relevant conduct." Id. at 944. Moreover, relative culpability is not necessarily dispositive, as none of the participants may have played a minor or minimal role. Id.

With respect to the first prong of the De Varon analysis, Carvajal-Sanchez

5

was held accountable only for the 1,134 kilograms of cocaine aboard the vessel, which he helped to transfer from the go-fast boat onto his ship. With respect to the second prong of the De Varon analysis, the only other participants discernable from the evidence and involved in the relevant conduct were the seven other crew members. Aside from the crew's titles and his reliance on his position as cook, Carvajal-Sanchez provided no evidence of his or his crew members' roles aboard the ship and no evidence showing that his responsibilities aboard the vessel were less important to the enterprise than the other crew members. Furthermore, Carvajal-Sanchez did more than just cook. Along with the rest of the crew, he transferred the 50 bales of cocaine from the go-fast boat and onto their ship. Because Carvajal-Sanchez's actual and relevant conduct were one and the same and involved 1,134 kilograms of cocaine, Carvajal-Sanchez provided no evidence showing that his responsibilities aboard the vessel were less important to the enterprise than the other crew members, and Carvajal-Sanchez participated in transferring the cocaine onto the vessel, we hold that the district court did not clearly err in denying a minor-role adjustment.

Accordingly, Carvajal-Sanchez's sentence is

**AFFIRMED.**